Andrew L. Packard (State Bar No. 168690)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Phone: (707) 782-4060

Erina Kwon (State Bar No. 235079)
Email: erina@lawaterkeeper.org
Benjamin A. Harris (State Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

**O**

**JS-6**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>    Plaintiff,<br><br>    v.<br><br>NASCO AIRCRAFT BRAKE, INC., a California corporation,<br><br>    Defendant. | Case No.: 2:25-cv-07725-ODW-MAR<br><br>**CONSENT DECREE** |

## <u>CONSENT DECREE</u>

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant Nasco Aircraft Brake, Inc. ("NASCO" or "Defendant") owns and/or operates a facility located at 13300 Estrella Avenue, in Gardena, California 90248 (the "Facility");

**WHEREAS**, the Facility operates under the Waste Discharge Identification ("WDID") Number 4 19I019852;

**WHEREAS**, the Facility's industrial activities primarily concern the manufacturing of aircraft wheel and brake components for military and commercial markets, and are categorized under Standard Industrial Classification ("SIC") Code 3728 ("Aircraft Parts and Auxiliary Equipment, Not Elsewhere Classified");

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit"),[1] and the Federal

---

[1] Any reference to the "General Permit" or "Permit" shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

[PROPOSED] CONSENT DECREE                                    Case No. 2:25-cv-07725-SVW-MBK

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility may result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on February 7, 2025, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit, at the Facility;

**WHEREAS**, on April 30, 2025 (and August 18, 2025), LA Waterkeeper filed (and refiled) a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:25-cv-03814-CAS-JDE (and Civil Case No. 2:25-cv-07725) ("Complaint");

1    **WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit
2    and the Clean Water Act for Defendant's discharges of pollutants into storm drains
3    and surface waters, including the Dominguez Channel, the Dominguez Channel
4    Estuary and Pacific Ocean (collectively, "Receiving Waters") that Defendant denies;

5    **WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or
6    "Parties") agree that it is in their mutual interest to enter into a Consent Decree
7    setting forth terms and conditions appropriate to resolving the allegations set forth in
8    the 60-Day Notice and Complaint without further proceedings;

9    **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree
10   shall be made in compliance with all applicable federal, state and local laws, rules
11   and regulations.

12   **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE**
13   **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**
14   **FOLLOWS:**

15   1.    The Court has jurisdiction over the subject matter of this action pursuant
16   to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

17   2.    Venue is appropriate in the Central District Court pursuant to Section
18   505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the
19   alleged violations are taking place is located within this District.

20   3.    The Complaint states a claim upon which relief may be granted against
21   Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

22   4.    LA Waterkeeper has standing to bring this action.

23   5.    The Court shall retain jurisdiction over this matter for the purposes of
24   interpreting, modifying, or enforcing the terms and conditions of this Consent Decree
25   and adjudicating all disputes among the Parties that may arise under the provisions of
26   this Consent Decree, for the Term (as defined below) of this Consent Decree
27   including for as long as necessary for the Court to resolve any motion to enforce this
28   Consent Decree, but only regarding issues raised within the Term. The Court shall

have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined in General Permit Section X.H.6, or as otherwise described herein and established in and by the respective Hydrologic Evaluations prepared for the applicable Facility.

g.   "Discharge Point" means each discharge location designated in the then-current SWPPPs for the Facility.

h.   "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.   "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.   "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches at least twenty four (24) hours prior to the rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90248, East Rancho Dominguez, CA, USA."[2]

k.   "MIP" means a Monitoring Implementation Plan.

l.   "PPT" means Pollution Prevention Team.

m.   "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.   "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.   "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.   "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.   "SWPPP" means a Storm Water Pollution Prevention Plan.

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.8961&lon=-118.1945

[PROPOSED] CONSENT DECREE                                    Case No. 2:25-cv-07725-SVW-MBK

r. "Term" means the period between the Effective Date and the "Termination Date."

s. "Termination Date" means the latest of:

    i. June 30 following three (3) years from the Effective Date;

    ii. June 30 following two (2) years after any advanced treatment BMPs pursuant to Paragraph 15(b) are fully installed, operational, and optimized, at the Facility, if ever;

    iii. Seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the dates in Paragraph 11.s.i. and 11.s.ii. above; or

    iv. Seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

    v. However, if the Facility (1) ceases industrial operations at that Facility; (2) eliminates all sources of industrial stormwater pollution at that Facility; (3) files a Notice of Termination ("NOT") under the General Permit; (4) has met all accrued monetary obligations in this Consent Decree and there are no ongoing, unresolved proceedings or processes to enforce the Consent Decree; and (5) receives approval by the Regional Board of the NOT, then Defendant's affirmative obligations hereunder with respect to the Facility, except for any payment and data retention obligations, shall cease five (5) days after Defendant provides written notification to LA Waterkeeper of such Regional Board approval.

t. "Water Year" means the year-long period between July 1st and June 30th each year, and is referred to by the year in which the

later date falls (e.g., Water Year 2026 will run from July 1, 2025 to June 30, 2026).

u.    "Wet Season" means the period beginning October 1st of any given calendar year and ending May 31st of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Current and Additional Best Management Practices</u>.  Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with (1) BAT/BCT; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

13.    <u>Rain Gauge/Sensor</u>. As a term of this decree, Defendant has installed and will maintain an electronic rain gauge or sensor at the Facility for the entire Term of this decree. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and hourly, non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by anything outside of Defendant's control. In the event of a rain gauge malfunction, Defendant shall use rain data from National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90248, East Rancho Dominguez, CA, USA." for purposes of precipitation quantities and timing.

14.    <u>Non-Structural BMPs for the Facility</u>.

a.    As soon as possible but no later than sixty (60) days of the Effective Date, unless otherwise stated, Defendant shall develop and implement the following BMPs at the Facility:

(1) **Enhanced Outdoor Paved Surface Cleaning.** Implement a powerwashing program with LA Pressure Washing, Inc. ("LAPW") using a high-pressure, hot water system on all outdoor paved areas at least once per month all year, and twice per month during the Wet Season. Employ hand sweeping and/or vacuuming with a backpack-style HEPA vacuum on the same schedule in areas a mechanical sweeper cannot access.  The Defendant's contract with LAPW shall require LAPW to provide disposal manifests showing delivery of all wash waters to an approved facility and prohibiting the disposal of any wash waters to any storm drain system.  LAWK shall have the right to perform spot inspections (with reasonable notice provided by Defendant) of LAPW's cleaning efforts to confirm that all collection, containment and transfer methods are consistent with this decree.

(2) **Debris Bin Management:** Ensure debris bin containing CNC process waste remains closed or covered at all times except when actively in use;

(3) **Secure Storage Areas:** Keep metal powder mixing and dosing areas closed or otherwise contained at all times to minimize dust dispersion;

(4) **Remove** all abandoned or inutile equipment, bins, and barrels from the site and consolidate storage areas;

(5) **Improved Tracking Control/Sticky Pads**. Replace the dust collection adhesive floor film near the rear access door daily to enhance particulate control;

(6) Implement a formal **pre-rain inspection and protection protocol** that includes checking all filters, deploying wattles, and temporarily covering materials most likely to contribute to stormwater pollution;

(7) **Increased Weekly Inspections**.  Conduct weekly inspections of all downspouts and hazardous material and waste storage areas to ensure control measures are properly implemented and containment integrity is maintained;

(8) **Increased Employee Training**.  Comprehensive training of all employees, both initially and annually in September, on the SWPPP's purpose and requirements, on hazardous material handling, waste control, and disposal procedures;

Within seven (7) days of the implementation of all of the above BMPs, and in any case no later than November 1, 2025, Defendant shall confirm to LA Waterkeeper in writing, with representative photographs or other evidence if representative photographs are not feasible, that it has implemented all of the BMPs as set forth above.  If Defendant is unable to obtain parts, materials or qualified labor to perform or install any of the above BMPs within the 60-day period, then Defendant will provide prompt notice to LA Waterkeeper, and if LA Waterkeeper agrees that Defendant has made a reasonable effort to comply with this provision, then Defendant will be granted additional time to complete the applicable BMP.

      b.      **Advanced Treatment BMPs**.  LA Waterkeeper contends that the Facility will require Advanced Treatment BMPs to achieve compliance with NALs and NELs in the future.  Defendant disagrees with LA Waterkeeper's contention.  The Parties agree to address the issue during the first and second Water Years of this Agreement (WY 2026 and WY 2027) by optimizing and enhancing the housekeeping measures identified above and increasing sampling and analysis as described below.  On or before July 1, 2027, the Parties shall meet and confer to

review the results of the sampling conducted in Water Years 2026 and 2027, as well as the internal sampling study discussed in Section III.B, below.  Within thirty (30) days following the meet and confer, LA Waterkeeper shall provide a written response identifying any proposed additional BMPs, if appropriate, which will include Advanced Treatment BMPs or other measures necessary, in LA Waterkeeper's view, to achieve compliance with applicable NALs and NELs.  Within thirty (30) days of receipt of LA Waterkeeper's written response, Defendant shall provide a written reply indicating acceptance or proposing alternative or countermeasures.  The Parties shall make good faith efforts to reach agreement on any additional BMPs to be implemented based on the Water Year 2026 and 2027 monitoring results.  Nothing is this subparagraph or this Consent Decree shall create a presumption that Advanced Treatment BMPs are necessary.

15.  <u>Structural BMPs for the Facility</u>.  On or before **November 1, 2025**, Defendant shall develop and implement the following BMPs at the Facility:

    a.  **Strip Gates.**  Install vinyl strip gates at all rear Facility access doors to minimize airborne dust migration;

    b.  **Berm Separation.**  Raise the height of the berm or install similarly effective physical barriers at the southeast corner of the Facility to prevent storm water run-on from the surface of the neighboring facility;

Within seven (7) days of the implementation of all of the above BMPs, and in any case no later than **November 1, 2025**, Defendant shall confirm to LA Waterkeeper in writing, with representative photographs or other evidence if representative photographs are not feasible, that it has implemented all of the BMPs as set forth above.  If Defendant is unable to obtain parts, materials or qualified labor to perform or install any of the above BMPs within the time allowed, then Defendant will

provide prompt notice to LA Waterkeeper, and if LA Waterkeeper agrees that Defendant has made a reasonable effort to comply with this provision, then Defendant will be granted additional time to complete the applicable BMP.

**B.**    **SAMPLING AT THE FACILITY**

16.    Representative Internal Sampling of Roofspouts.  During Water Years 2026 and 2027, Defendant shall conduct sampling and analysis at all Facility Roofspouts during four rain events (which can be, but are not required to be, qualifying QSEs).  These samples shall be analyzed for Copper (dissolved, particulate, and Total).  While this sampling may be undertaken in conjunction with the sampling described in Paragraph 17 below, the fact that the Facility Roofspouts are not discharging during such sampling collection shall not excuse the obligation to capture discharges from each of the Facility's Roofspouts during four separate rain events. On or before July 1, 2027, Defendant shall complete and submit to Plaintiff a report summarizing the results of the Roofspout sampling.

17.    Defendant shall develop a monitoring program consistent with the General Permit and the applicable regulations. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events (two Qualifying Storm Events during the first half of the Reporting Year and two Qualifying Storm Events during the second half of the Reporting Year) provided such events occur during operating hours (which are set forth in Section 1.3 of the Facility SWPPP, and currently Monday – Friday, 6:00 a.m. – 2:00 a.m.; and as needed, Saturday, 6:00 a.m. – 2:00 p.m.). Defendant will use best efforts to capture the first two Qualifying Storm Events in each half of the Reporting Year.

18.    Such sampling shall take place within the four (4) hour period required by the General Permit § XI.B.5.  If Defendant would have been required to collect samples during a rain event pursuant to the General Permit and this Consent Decree had such rain event produced a discharge, but Defendant did not collect samples

1   because such rain event did not produce a discharge, then Defendant shall document

2   the inability to sample by taking representative photographs during the rain event of

3   each Discharge Point from which no discharge occurred. Defendant shall submit such

4   representative photographs to LA Waterkeeper by email, along with rain

5   gauge/sensor data for the date of such rain event, within ten (10) days of a written

6   request for such records by LA Waterkeeper.

7       19.   Sampling Parameters. All samples collected pursuant to this Consent

8   Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should

9   Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R.

10  § 131.38 and/or in the General Permit as a result of changed operations, a revised

11  pollutant source assessment, or a new mandate from a regulatory agency, such

12  parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all

13  purposes, including any Action Plan requirements (as defined below). Defendant

14  shall immediately notify LA Waterkeeper of its intent to conduct sampling for any

15  such additional parameters and the Parties shall meet and confer regarding the

16  applicable Table 1 limit for such purposes within ten (10) days of such notification.

17      20.   Laboratory and Holding Time. Except for pH samples, Defendant shall

18  deliver all samples to a California-certified environmental laboratory for analysis

19  within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be

20  completed onsite using a portable instrument that is calibrated and used according to

21  the manufacturer's instructions.

22      21.   Detection Limit. Defendant shall request that the laboratory use

23  analytical methods adequate to detect the individual pollutants at or below the values

24  specified in the General Permit and Table 1 below.

25      22.   Reporting. Defendant shall upload complete laboratory results of all

26  samples collected at the Facility to SMARTS in accordance with the General Permit

27  and shall provide copies to LA Waterkeeper within ten (10) days of receiving the

28  laboratory report with the results.

C.    REDUCTION OF POLLUTANTS IN DISCHARGES

23.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels at or below those in Table 1.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Copper | 0.0332 mg/L (annual); 0.06749 mg/L(instantaneous) | NEL |
| Iron | 1.0 mg/L | NAL |
| Zinc | 0.26 mg/L | NAL |
| N+N | 0.68 mg/L | NAL |
| TSS | 100 mg/L | NAL |
| O&G | 15 mg/L | NAL |
| pH | <6 or >9 S.U. | NAL |

24.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of any same pollutant in any two (2) storm water samples from the Facility exceeds any numeric limit contained in Table 1 during any Reporting Year during the Term.

25.    <u>Action Plan</u>.   If at any time during the Term, (a) Defendant has an unauthorized non-storm water discharge in violation of the General Permit; (b) storm water samples demonstrate an Exceedance as defined above; or (c) after an advanced treatment system is fully installed, operational, and optimized, if ever,  the advanced treatment system discharges untreated storm water in smaller than a Design Storm, each a ("Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger Event ("Action Plan"). However,

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[PROPOSED] CONSENT DECREE                    Case No. 2:25-cv-07725-SVW-MBK

an Action Plan shall not be required when the BMPs for the applicable unauthorized non-storm water discharge or Exceedance for the same pollutant in the same drainage area were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the applicable unauthorized non-storm water discharge, or QSE sampling that led to the Exceedance.[4] The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event.

      a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each pollutant exceedance, and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within ten (10) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall

---

[4] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

confirm to LA Waterkeeper in writing, with representative photographs, or other evidence if representative photographs are not feasible, that such BMP has been implemented as set forth in the Action Plan.

b.    Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

    i.    Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site.

    ii.    Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iii.    Treatment Systems. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

    iv.    Evaluation of Existing BMPs. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

    v.    Upgrade Overhead Structures. Upgrading all Facility shed roofs and other overhead structures around the main building to comply with the General Permit's definition of "Storm-Resistant Shelters";

c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. If LA Waterkeeper does not provide a written response within said thirty (30) day period, LA Waterkeeper will not be allowed to provide any further comments pursuant to this provision and the Action Plan will be deemed accepted as submitted. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, if any, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Defendant shall revise the then-current SWPPP for the Facility to reflect the changes required by the Action Plan, as set forth in Paragraph 31.b.i. below.

e.    <u>Action Plan Payments</u>. Defendant shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made payable to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a

[PROPOSED] CONSENT DECREE                       Case No. 2:25-cv-07725-SVW-MBK

payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.    VISUAL OBSERVATIONS**

26.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

27.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs at the Facility to ensure that operational BMPs are being implemented, and structural BMPs are in good condition or working order. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

28.    <u>Visual Observations Records</u>. Defendant shall maintain observation records, including representative photographs, to document compliance with Paragraphs 26 and 27. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water

1   discharges; and (iv) (where applicable) representative photographs of all the

2   foregoing. Defendant shall provide LA Waterkeeper with a copy of those records

3   within ten (10) days of receipt of a written request from LA Waterkeeper for those

4   records.

5       **E.    TRAINING, PLANS, AND PERMIT ENROLLMENT**

6       29.    <u>Employee Training Program</u>. Within forty-five days of the Effective

7   Date, Defendant shall develop and implement an employee training program that

8   meets the following requirements and ensures (1) that there is a sufficient number of

9   employees at the Facility designated to achieve compliance with the General Permit

10  and this Consent Decree ("Designated Employees"), and (2) that these Designated

11  Employees are properly trained to perform the activities required by the General

12  Permit and this Consent Decree ("Training Program"):

13          a.    <u>Materials</u>. Training materials shall be the procedures provided in

14              the Facility's SWPPP;

15          b.    <u>Language</u>. The training and training materials shall be available

16              and offered in the language(s) in which relevant employees are

17              fluent if the employees do not understand English. If necessary,

18              Defendant shall provide a translator or translators at all trainings

19              where such translation is likely to improve staff comprehension of

20              the Training Program and improve compliance with this Consent

21              Decree and the General Permit;

22          c.    <u>Training Frequency</u>. Training shall be provided by a California-

23              based Qualified Industrial Stormwater Practitioner  familiar with

24              the requirements of this Consent Decree and the General Permit,

25              and shall be repeated as necessary to ensure that all relevant

26              employees are familiar with the requirements of this Consent

27              Decree, the Permit, and the Facility's SWPPP. All relevant new

28

staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.    <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.    <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.    <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.    <u>Maintenance Training.</u>  Defendant shall train all Designated Employees at the Facility to restrict all maintenance activities to covered designated work areas; if emergency maintenance activities must be performed outdoors, absorbent shall be laid down before conducting any operational activity and action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground; maintain spill clean-up supplies at all fluid storage, press, and maintenance areas; all drip pans and open waste containers shall be attended at all times they are in use; transfer all wastes to proper containers as soon as practical, but at the minimum at the end of the workday.

h.    <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated

    

Employees shall participate in the Training Program within forty-five (45) days of their hiring date; and

    i.    <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within ten (10) days of receipt of a written request.

30.    <u>SWPPP Revisions</u>.

    a.    <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper sixty (60) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

        i.    A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

        ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

        iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.  A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree including accurately depicting the different drainage areas and flows;

v.  A MIP as required by sections XI and X.I of the General Permit;

vi.  Documentation as required by the General Permit, Attachment I § II.H.3;

vii.  A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and,

viii.  A Training Program as described above at Paragraph 29.

b.  Additional SWPPP Revisions.

i.  Within forty-five (45) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.  Within forty-five (45) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge, Defendant shall revise the then-current SWPPP for the applicable Facility to reflect such

1      changes and submit the complete, updated SWPPP to LA

2      Waterkeeper for LA Waterkeeper's review and comment.

3      c.    Review of SWPPP.  For any SWPPP updates pursuant to

4      Paragraphs 30.b and 30.c, LA Waterkeeper shall have thirty (30)

5      days upon receipt of Defendant's completed SWPPP to provide

6      Defendant with comments.  If LA Waterkeeper does not provide a

7      written response within said thirty (30) day period, LA

8      Waterkeeper will not be allowed to provide any further comments

9      pursuant to this Paragraph and the SWPPP will be deemed

10      accepted as submitted. Within thirty (30) days of receiving LA

11      Waterkeeper's comments and proposed changes to the SWPPP,

12      Defendant shall consider each of the comments and proposed

13      changes and either accept them or justify in writing why a change

14      is not incorporated. The Parties agree to work in good faith to

15      resolve any disputes with respect to the SWPPP, and any

16      remaining disputes will be resolved through timely initiation of

17      the dispute resolution procedures in Section IV below. Following

18      its incorporation of proposed modification or additions (if any)

19      into each revised SWPPP, Defendant shall upload the applicable

20      SWPPP to SMARTS.

21    **F.    COMPLIANCE MONITORING AND REPORTING**

22      31.    LA Waterkeeper may conduct one annual site inspection ("Site

23    Inspection") at the Facility during each Reporting Year during the Term for the

24    purpose of ensuring compliance with this Consent Decree and the General Permit. In

25    the event of a dispute regarding Defendant's compliance with this Consent Decree,

26    and provided a Site Inspection would be relevant to resolving the Parties' dispute, the

27    Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's

28    request. Plaintiff shall not unreasonably request, and Defendant shall not

unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 58. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative.  LA Waterkeeper shall be permitted to take photographs or video recording of the outside of the Facility during any Site Inspection and shall be permitted to take photographs or video recording of the inside of the Facility except where such photography or video recording would capture proprietary information, processes related to military contracts or otherwise confidential or restricted information.

      32.   <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

          a.   Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 59, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

24

b. Within ten (10) days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 59, any compliance document, inspection report, written communication and/or correspondence , or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

33. <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying:  Fifteen Thousand Dollars ($15,000), within thirty (30) days of the Entry Date.  If the Term continues for more than three (3) years beyond the Entry Date, then Defendant shall make an additional payment of Five Thousand Dollars ($5,000.00) per year within thirty (30) days of the anniversary of the Entry Date for each such additional year.  Each payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on the payment. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**G. ENVIRONMENTALLY BENEFICIAL PROJECTS, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

34. <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to the Dominguez Channel, Defendant shall make a payment totaling Thirty-Seven Thousand Dollars Five Hundred ($37,500.00) to the Del Amo Action Committee, within thirty (30) days of the Entry Date, payable to the Del Amo Action Committee and sent via certified mail to Attn: Cynthia Babich, Del Amo Action Committee, P.O. Box 549, Rosamund, CA

93560.  Del Amo shall provide a Form W-9 to Defendant at least ten days before any payment is due, and no payment will be due sooner than ten days before Defendant receives the completed Form W-9.  Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree

35.    LA Waterkeeper's Fees and Costs. Defendant shall pay a total of $62,500 to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment shall within thirty (30) days of the Entry Date by check payable to "Los Angeles Waterkeeper" and sent via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012.  LA Waterkeepr shall provide a Form W-9 to Defendant at least ten days before any payment is due under this Consent Decree, and no payment will be due sooner than ten days before Defendant receives the completed Form W-9.  Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

36.    Missed Deadlines. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline. Defendant shall have ten (10) days from receipt of such notice to respond to LA Waterkeeper, and, if necessary, cure such delinquency. If Defendant fails to respond, and if necessary, cure such alleged delinquency within ten (10) days of receipt of Plaintiff's notice, then Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payment shall be made by check payable to: the Del Amo Action Committee, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 35. Payment shall be sent via certified mail to Del Amo Action Committee, P.O. Box 549, Rosamund, CA 93560. Defendant agrees to make the stipulated payment within

26

1  fourteen (14) days after the resolution of the event that precipitated the stipulated

2  payment liability.

3      37.  <u>Interest On Late Payments</u>. Defendant shall pay interest on any

4  payments, fees, or costs owed pursuant to this Consent Decree that are not received

5  by the due date. The interest shall accrue starting the next business day after the

6  payment is due and shall be computed at a rate of: 0.05% per month (6% per year).

7  Interest shall continue to accrue daily on any outstanding balance until Defendant are

8  current on all payments then due under this Consent Decree, and shall be paid at the

9  same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest

10 on late payments shall be paid by check payable to: Del Amo Action Committee, and

11 such funds shall be used for the sole purpose of funding environmentally beneficial

12 projects, as described in Paragraph 34. Payment shall be sent via certified mail to  Del

13 Amo Action Committee, P.O. Box 549, Rosamund, CA 93560.

14 **IV.  DISPUTE RESOLUTION**

15     38.  This Court shall retain jurisdiction over this matter for the Term for the

16 purposes of enforcing its terms and conditions, and adjudicating all disputes among

17 the Parties that may arise under the provisions of this Consent Decree. The Court

18 shall have the power to enforce this Consent Decree with all available legal and

19 equitable remedies, including contempt.

20     39.  <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the

21 dispute resolution procedures of this Section IV by notifying the other Party in

22 writing of the matter(s) in dispute and of the disputing Party's proposal for resolution.

23 The Parties shall then meet and confer in good faith (either telephonically or in

24 person) within ten (10) days of the date of the notice in an attempt to fully resolve the

25 dispute no later than thirty (30) days from the date of the meet and confer.

26     40.  <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within

27 thirty (30) days from the date of the meet and confer described in Paragraph 38 the

28 Parties agree that the dispute may be submitted for formal resolution by filing a

motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

41.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

42.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter or the Complaint up to and including the Termination Date of this Consent Decree.

43.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

44.    <u>Plaintiff's Non-Waiver</u>.  Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

# VI.    MISCELLANEOUS PROVISIONS

45.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

46.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

47.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

48.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the General Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

49.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

50.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

51.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

52.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

53.    <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

54.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

55.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against either Plaintiff or Defendant.

56.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

57.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

58.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

59.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Nasco Aircraft Brake, Inc. |
| Erina Kwon | Business Unit Manager |
| Benjamin Harris | c/o Jay Hamade |
| Madeleine Siegel | 13300 Estrella Ave. |
| 360 E 2nd St., Suite 250 | Gardena, CA 90248 |
| Los Angeles, CA 90012 | Jay.Hamade@nascoaircraft.com |
| Email: erina@lawaterkeeper.org | |
| Email: ben@lawaterkeeper.org | And |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | Aerospace Group, EHS Director |
| | c/o Charles E. Osborne |

Parker-Hannifin Corporation
1635 Parkland Boulevard
Cleveland, OH 44124
Ed.osborne@parker.com

With copies to:

Andrew L. Packard
Law Offices of Andrew L. Packard
245 Kentucky street, Suite B3
Petaluma, CA 94952
Email:andrew@packardlawoffices.com
Phone: (707) 782-4060, Ext. 1

With copies to:

David Russey & Chad Wissinger
Dentons Cohen & Grigsby P.C.
625 Liberty Avenue
Pittsburgh, PA 15222
david.russey@dentons.com
chad.wissinger@dentons.com

And

Tasha N. Miracle
Assistant General Counsel
Parker-Hannifin Corporation
1635 Parkland Boulevard
Cleveland, OH 44124
Tasha.miracle@parker.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

60.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as

[PROPOSED] CONSENT DECREE                    Case No. 2:25-cv-07725-SVW-MBK

1  inadmissible as a settlement communication under Federal Rule of Evidence 408 and

2  California Evidence Code section 1152.

3

4      The Parties hereto enter into this Consent Decree and submit it to the Court for

   its approval and entry as a final judgment.

5

6      IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

7  as of the date first set forth below.

8

9

10  APPROVED AS TO CONTENT:

    Dated: ___September 3___, 2025          By: _____

11                                              Bruce Reznik

12                                              Executive Director

                                                Los Angeles Waterkeeper

13

14  Dated: _____, 2025          By: Christina Tsai Digitally signed by Christina Tsai Date: 2025.09.16 08:35:38 -04'00'

                                                Christina Tsai

15                                              General Manager

16                                              On behalf of Nasco Aircraft Brake, Inc.

17

18

    APPROVED AS TO FORM

19

                                                Law Offices of Andrew L. Packard

20

    Dated: ___September 18___, 2025         By: _____

21                                              Andrew L. Packard

22                                              Attorney for Plaintiff

                                                Los Angeles Waterkeeper

23

24  Dated: ___9/17___, 2025              By: _____

25                                              Chad Wissinger

26                                              Attorney for Defendant

                                                Nasco Aircraft Brake, Inc.

27

28  **IT IS SO ORDERED.**

                                   33

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: November 14, 2025          CENTRAL DISTRICT OF CALIFORNIA

_____

Hon. Otis D. Wright, II
United States District Court Judge